1  HARMEET K. DHILLON (SBN: 207873)
   harmeet@dhillonlaw.com
2  KRISTA L. BAUGHMAN (SBN: 264600)
   kbaughman@dhillonlaw.com
3  GREGORY R. MICHAEL (SBN: 306814)
   gmichael@dhillonlaw.com
4  DHILLON LAW GROUP INC.
   177 Post Street, Suite 700
5  San Francisco, California 94108
   Telephone: (415) 433-1700
6  Facsimile: (415) 520-6593
7

8  Attorneys for Plaintiffs Qiuzi Hu, Edwin Ramirez, Ivan
   Ronceria, Wenzhi Fei, Proposed Class and Subclass,
9  and Collective Action

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **QIUZI HU**, an individual, **EDWIN RAMIREZ**, an individual, **IVAN RONCERIA**, an individual, **WENZHI FEI**, an individual, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **JOSE M. PLEHN-DUJOWICH**, an individual, and **BIZQUALIFY LLC**, a California limited liability company, <br><br> Defendants. | Case Number: <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT FOR:** <br><br> 1. **Failure to Pay Minimum Wage (29 U.S.C. § 201 *et seq.*);** <br> 2. **Failure to Pay Minimum Wage (Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1);** <br> 3. **Failure to Provide Accurate Wage Statements (Cal. Lab. Code § 226);** <br> 4. **Failure to Reimburse Required Business Expenses (Cal. Lab. Code § 2802);** <br> 5. **Failure to Pay Earned Wages Upon Discharge (Cal. Lab. Code §§ 201-203);** <br> 6. **False Advertising (Cal. Bus. & Prof. Code § 17500);** <br> 7. **Unfair Competition (Cal. Bus. & Prof. Code § 17200);** <br> 8. **Violation of Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*);** <br> 9. **Fraud (Cal. Civ. Code §§ 1709, 1710);** <br> 10. **Negligent Misrepresentation (Cal. Civ. Code § 1710(2));** <br> 11. **Breach of Implied Contract;** <br> 12. **Quantum Meruit;** <br> 13. **Unjust Enrichment; and** <br> 14. **Theft by False Pretenses (Cal. Pen. Code §496(c))** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Qiuzi Hu, Edwin Ramirez, Ivan Ronceria, and Wenzhi Fei (collectively, "Plaintiffs") bring this class and collective action against Dr. Jose M. Plehn-Dujowich ("Dr. Plehn-Dujowich") and his company Bizqualify LLC ("BizQualify"), for damages, penalties, and injunctive relief following Defendants' failure to compensate hundreds of university students who Defendants fraudulently convinced to work for them, by falsely promising to provide them with educational instruction in the areas of finance, accounting, and economics, a course certification from University of California, Berkeley and/or University of California, Los Angeles – with which Defendants' program is not sponsored, endorsed, or affiliated – and a letter of recommendation, in exchange for the students each paying thousands of dollars to Defendants in the form of a "course fee" and conducting dozens of hours of research for the benefit of Defendants' business.

## INTRODUCTION

1.　　Defendants Dr. Plehn-Dujowich and BizQualify fraudulently and maliciously recruited hundreds of foreign and domestic university students to enroll in the Global Financial Data Project ("GFDP"), a 10-week online program that purports to offer – yet fails to provide – educational instruction, a certification from the University of California, Berkeley Haas School of Business and/or the University of California, Los Angeles Anderson School of Management, and a letter of recommendation written by Dr. Plehn-Dujowich, in exchange for a payment of $2,413 (and in some cases more), made directly to BizQualify. Defendants falsely advertise that the GFDP will prepare the students for a career or graduate program in finance, accounting, business, or economics, and utilize Dr. Plehn-Dujowich's previous employment relationships with UC Berkeley and UCLA to fraudulently mislead students into understanding that the program is hosted, approved, or affiliated with those institutions, including by prominently displaying UC Berkeley and UCLA trademarks on advertisements for the program, and by issuing invoices to the enrollees that display the words "Accounting@Berkeley," in UC Berkeley's readily recognized typography. In truth, Defendants use the GFDP to fraudulently acquire student workers who *pay BizQualify* for work being completed for Defendants, in exchange for promises that are never fulfilled.

2.　　Plaintiffs Hu, Ramirez, Ronceria, and Fei seek to recover monetary damages and temporary and permanent injunctive relief, on behalf of themselves and all others similarly



Complaint　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Case No.

situated, to prevent Defendants from continuing their fraudulent scheme.

**JURISDICTION AND VENUE**

3.    This action arises under 29 U.S.C. § 201 *et seq.* in relation to Defendants' failure to pay their student-employees minimum wage for work performed for Defendants. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over all related state claims pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to the claims for relief occurred in or were directed toward this District, and each of the Defendants is subject to the personal jurisdiction of this Court. Such acts or omissions include, but are not limited to, Defendants' fraudulently displaying the UC Berkeley logo on advertising and billing materials; deceiving Plaintiffs and other enrollees by falsely suggesting that the GFDP is affiliated, sponsored, or endorsed by UC Berkeley, when it is not; promising to issue course certifications bearing UC Berkeley's mark; and recording, or live-streaming, "instruction" in and from this district throughout the duration of the online program. Plaintiffs submit a declaration by Plaintiff Qiuzi Hu attesting to these facts, pursuant to California Civil Code § 1780(d) and California Code of Civil Procedure § 2015.5.

5.    This Court has personal jurisdiction over each of the Defendants, because each Defendant is domiciled in the State of California, has sufficient minimum contacts with California, and/or otherwise has intentionally availed himself or itself of significant benefits provided by the State of California, rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

**INTRADISTRICT ASSIGNMENT**

6.    This Action is properly assigned to the San Francisco or Oakland Divisions of the Court, as the conduct giving rise to this dispute occurred in or were directed to Alameda County, California. *See* Local Rule 3-2(d).

**PARTIES**

7.    Plaintiff Qiuzi "Vanessa" Hu ("Hu") is an individual who currently resides in Burbank, California, and has resided there since April, 2017. Prior to moving to California, Hu resided in

Complaint                                                                                                            Case No.

Phoenix, Arizona.

8.     Plaintiff Edwin Ramirez ("Ramirez") is an individual who, at all times relevant to the Complaint, resided in South San Francisco, California.

9.     Plaintiff Ivan Ronceria ("Ronceria") is an individual who, at all times relevant to the Complaint, resided in Casselberry, Florida.

10.     Plaintiff Wenzhi Fei ("Fei") is an individual who, at all times relevant to the Complaint, resided in Santa Cruz, California.

11.     Defendant Dr. Plehn-Dujowich is an individual who, on information and belief, permanently resided in Newport Beach and/or San Leandro, California at all times relevant to the Complaint, and continues to reside in one or both of those locations.

12.     Defendant BizQualify is a California limited liability company with its principal place of business in San Leandro or Newport Beach, California. BizQualify engages in the business of selling financial data and analysis, which it claims on its website to be "the highest quality available financial information on private companies in the U.S.," sourced from filings with government regulatory agencies. According to documents filed with the California Secretary of State, Dr. Plehn-Dujowich is the sole Manager and Chief Executive Officer of BizQualify, and serves as its agent for service of process.

## RELEVANT FACTS

### Defendants Develop Fraudulent Scheme to Obtain Unpaid Labor

13.     Dr. Plehn-Dujowich is a highly-educated businessman and academic, who routinely exploits his professional connections to several major universities in the United States to further Defendants' fraudulent practices described in this Complaint. He received a B.S. from the Massachusetts Institute of Technology ("MIT") in information technology and economics, and a Ph.D. in economics from the University of Chicago. He served as an assistant professor in the areas of accounting, finance, strategic management, and economics at Temple University's Fox School of Business and at State University of New York at Buffalo. Dr. Plehn-Dujowich was also an accounting professor at the UC Berkeley, Haas School of Business, before becoming a finance professor at the UCLA Anderson School of Management. Dr. Plehn-Dujowich is no longer employed by UC Berkeley



or UCLA in any capacity, according to those institutions.

14.     In or around 2013, Dr. Plehn-Dujowich founded BizQualify to engage in the for-profit accumulation, analysis, and sale of public and private company financial data to consumers. According to information presented on its website, BizQualify "leverages Form 5500 filings with the IRS & Labor Dept. . . . [and] collects regulatory filings and scrapes the websites of 10M+ companies."[1]  The company claims to use the information contained in those materials to conduct "fundamental research" and quantitative analysis. BizQualify sells this information and research to its customers, who then use the information in making investment, sales, and marketing decisions.

15.     Sifting through these regulatory documents to extract the financial data and analyze that data in a manner useful to Defendants' business is a labor-intensive exercise, requiring substantial work on the part of the researcher. As a result, Defendants sought out cost-effective methods of acquiring and analyzing as much financial data as possible, while limiting costs.

16.     Beginning in 2016, Defendants established the fraudulent educational program called the Global Financial Data Project, with Dr. Plehn-Dujowich acting as the project's Executive Director. Defendants used the program as a means to recruit university students, particularly foreign students, interested in business, accounting, and finance to perform the data collection and analysis tasks required for Defendants' business, without pay. This online program runs cyclically once, or more, per year, and was held at least four or five times between October, 2016 and December, 2017.

17.     In exchange for a "course fee" of $2,413 to $2,913 and their work, Defendants promised Plaintiffs and the other enrollees meaningful educational instruction, a course certification from UC Berkeley and/or UCLA, and a letter of recommendation written by Dr. Plehn-Dujowich – none of which Defendants provided to Plaintiffs, or to most, if not all, other enrollees in the program.

18.     According to Defendants' promotional materials for the program, the GFDP is a 10-week online program composed of four phases: (1) Learning; (2) Data Collection; (3) Data Analysis; and (4) Presentations. During the "Learning" phase, the students were to receive instruction and training from Dr. Plehn-Dujowich on how to perform the financial data collection and research.

---

[1] At the time of this filing, BizQualify's flyer describing its business services is accessible at the following url: https://bizqualify.com/assets/bq_flyer_2017-a9def638ace8830e5055ae517babead0.pdf

Complaint                                                                                                  Case No.

During the "Data Collection" and "Data Analysis" phases of the program, the students collected and were provided data by BizQualify to analyze and "uncover patterns and trends" and "[w]rite a professional report." Finally, the students were to present their findings for feedback and assessment. A copy of Defendants' flyer for the February 3, 2017 to April 14, 2017 program is attached here as **Exhibit A**.

19.    Defendants controlled and directed Plaintiffs in this process. Defendants provided Plaintiffs and the other enrollees the financial data to analyze, or otherwise supervised and directed the data collection, and supervised and directed how to conduct the relevant financial analysis. Indeed, according to Defendants' flyer for the program, Defendants intended to provide three hours of instruction for each of the ten weeks of the program, to Plaintiffs and the other enrollees on how to complete their work. The enrollees were also expected to spend approximately three or more hours each week collecting and researching data on their own, pursuant to Defendants' instructions.

20.    Given Dr. Plehn-Dujowich's sole management of both BizQualify and the GFDP, the fact that students are required to make "tuition" payments to BizQualify (not UC Berkeley or UCLA, as some of Defendants' billing statements falsely suggest), and the nature of BizQualify's data collection and analysis business, Plaintiffs are informed and believe that BizQualify is utilizing the information acquired and analyzed by the students in furtherance of BizQualify's for-profit enterprise. Defendants do so without disclosing the true purpose of GFDP to the students, which is to fraudulently acquire workers who pay BizQualify for the work being completed for Defendants, in exchange for promises that are never fulfilled.

21.    As a result, Defendants entered, albeit fraudulently, into an employer-employee relationship with each of the enrollees in the GFDP, including Plaintiffs, yet failed to compensate the student-employees, or fulfill Defendants' promises to provide them with educational instruction, a course certification, and a letter of recommendation written by Dr. Plehn-Dujowich.

22.    As discussed in more detail below, Plaintiffs and all other enrollees did not receive what they bargained for, and instead were fraudulently exploited into paying Defendants for the privilege of completing Defendants' work for free.



Complaint                                                                                                    Case No.

**Defendants' False and Deceptive Advertising Practices**

23.     Defendants systematically engaged in fraudulent recruiting tactics, primarily targeting undergraduate and international students, both those living abroad and in the United States, by disseminating false and misleading advertisements about GFDP, and leveraging Dr. Plehn-Dujowich's prior relationships with UC Berkeley and UCLA faculty and/or staff to target students with an academic focus in business and finance. These fraudulent advertising efforts include, but are not limited to, the following:

a.    fraudulently disseminating flyers that display the UC Berkeley Haas School of Business and UCLA Anderson School of Management trademarks, falsely indicating that GFDP is sponsored, endorsed, approved, or is affiliated with these schools; *See* Ex. A;



b.    Fraudulently disseminating flyers that display "Accounting@Berkeley: Center for Financial Reporting and MAnagement," falsely indicating that GFDP is sponsored, endorsed, approved, or is affiliated with UC Berkeley;





Complaint                                                                                          Case No.

c.    Fraudulently disseminating flyers that display a website address containing the name "Haas," referring to the UC Berkeley Haas School of Business, falsely indicating that GFDP is sponsored, endorsed, approved, or is affiliated with UC Berkeley;

APPLY NOW

https://globalfinancialhaas.wufoo.com/forms/global-financial-data-project-fall-2016/

d.    falsely promising that Defendants will provide a "certificate of completion," also bearing the UC Berkeley and/or UCLA marks, in the same or substantially similar form as attached here as **Exhibit B**;

e.    falsely promising to provide a "letter of recommendation written personally by the Executive Director," Dr. Plehn-Dujowich; *See* Ex. A;

f.    falsely promising that GFDP will assist students in preparing for a career or graduate program in finance, accounting, business, or economics; *See* Ex. A;

g.    misleadingly using Dr. Plehn-Dujowich's former relationships with UC Berkeley and UCLA faculty and/or staff to send emails from UCLA and/or UC Berkeley email accounts to recruit prospective enrollees, including, by way of example, Dr. Plehn-Dujowich's email attached hereto as **Exhibit C,** thereby indicating that GFDP is sponsored, endorsed, approved, or is affiliated with those institutions;

h.    misleadingly using Dr. Plehn-Dujowich's prior affiliation with UC Berkeley and UCLA's faculty and/or staff to create general inquiry email addresses bearing the names of those institutions (i.e. "gfdp@haas.berkeley.edu" and "gfdp@anderson.ucla.edu"), for prospective enrollees to correspond with Dr. Plehn-Dujowich or his UC Berkeley and UCLA undergraduate teaching assistants; *See* Ex. A;

i.    fraudulently using Dr. Plehn-Dujowich's connections to UC Berkeley and UCLA to encourage undergraduate advisors at those universities to disseminate misleading advertisements from the advisors' email accounts, falsely suggesting that GFDP is sponsored, endorsed, approved, or is affiliated with UC Berkeley and/or UCLA, an example of which is attached hereto as **Exhibit D**;

Complaint                                                                                              Case No.

j.    fraudulently using Dr. Plehn-Dujowich's connections to UC Berkeley and UCLA to place advertisements for the GFDP on the UC Berkeley and UCLA websites, falsely suggesting that GFDP is sponsored, endorsed, approved, or is affiliated with UC Berkeley and/or UCLA, copies of which, as obtained from internet archiving service Wayback Machine, are attached here as **Exhibits E and F**;[2]

k.    fraudulently disseminating deceptive advertising materials falsely stating that the GFDP is "co-sponsored by UC Berkeley and UCLA" to other universities, including Ohio State University, University of Washington, University of Toronto, University of Illinois, University of Central Florida, and Texas A&M University, for the purpose of having undergraduate advisors at those universities relay that false information to students at their universities, an example of which is attached here as **Exhibit G**; and

l.    misleadingly submitting invoices to GFDP enrollees with "Accounting@Berkeley Center for Financial Reporting and Management" displayed on the invoice, thereby falsely indicating that GFDP is sponsored, endorsed, approved, or is affiliated with UC Berkeley and that payment is being remitted to UC Berkeley, in the form attached hereto as **Exhibit H**.



**INVOICE**

**BILL TO**                                        **INVOICE #** 83532
Ivan Ronceria                                      **DATE** 10/17/2016

_____

24.    Defendants did not intend to fulfill any of their promises to Plaintiffs and the other enrollees at the time they made such promises. Indeed, the GFDP was never sponsored, endorsed, approved, or affiliated with UC Berkeley or UCLA, and both institutions have since removed all GFDP advertisements from their websites. Dr. Plehn-Dujowich, who had been employed by UCLA as

_____

[2] UC Berkeley and UCLA have since removed these false and deceptive advertisements from their respective websites.



Complaint                                                          Case No.

of early 2017, at the time Plaintiffs enrolled in the GFDP, no longer works for that university.

25.    Both UC Berkeley and UCLA are widely recognized in many parts of Asia, and across the world as being premier educational institutions in the areas of business, finance, and economics. Knowing this, Defendants maliciously targeted unsuspecting international students, many of whom are not native English speakers, with their deceptive advertising campaigns. Indeed, Defendants' flyer, attached as Exhibit A, states an "[i]nternational background is preferred."

26.    Defendants' flyers also proclaim that the GFDP is "taught by Berkeley Haas and UCLA Anderson students and faculty," further misleading all those who read the flyers, particularly non-native English speakers, by suggesting that an official connection between UC Berkeley, UCLA, and the GFDP exists, where it does not.

**Plaintiffs Rely on Defendants' False Advertisements and Enroll in the GFDP**

27.    Defendants have conducted approximately five iterations of the 10-week GFDP program, including during the following dates: October 14, 2016 – January 13, 2017; February 3, 2017 – April 14, 2017, and June 2, 2017 – August 11, 2017. The latest known iteration of the program was advertised by Defendants, but Plaintiffs are unaware as to whether Defendants actually hosted the GFDP during that time.

28.    Over two hundred individuals, including Plaintiffs, have enrolled in the program and paid the applicable course fee. On information and belief, Defendants continue to operate the GFDP, and plan to do so in the future.

29.    In late 2016 and early 2017, Plaintiffs learned of the GFDP through the false and misleading promotional materials distributed by Defendants and their assistants, described above and attached hereto. In reliance on those false representations and promises, Plaintiffs enrolled in the GFDP for the February 3, 2017 to April 14, 2017 period. Each paid Defendants a $2,413 course fee, and completed all tasks required of them to register for the program.

30.    Upon commencement of the program, Dr. Plehn-Dujowich provided some initial, basic instruction on the class format and method for accessing BizQualify's financial data for analysis, to further Dr. Plehn-Dujowich and BizQualify's business interests. Dr. Plehn-Dujowich did not provide any meaningful educational instruction in the areas of finance, economics, accounting, or business,

Complaint                                                                                              Case No.

despite advertising and promising otherwise.

31.    Instead, the task of providing instruction to Plaintiffs and other enrollees fell primarily to Defendants' undergraduate student-instructors, including Ningrui Zhang, a student from UC Berkeley, and Danwei Chen, a student from UCLA. Ms. Chen also held the role of Managing Director of the GFDP. Plaintiffs are unaware of whether Ms. Chen or Ms. Zhang were compensated, or were promised compensation, for their roles in Defendants' fraudulent program.

32.    Throughout the several weeks of the program, Plaintiffs received instruction primarily from Ms. Chen and/or Ms. Zhang, who instructed one class each. Dr. Plehn-Dujowich played little or no role in providing course instruction, and passively observed the students' presentations, providing little or no constructive guidance or evaluation of their work.

33.    During this time, and throughout the project, Plaintiffs, along with all other enrollees, spent approximately three to five hours collecting and analyzing BizQualify's financial data per week for Defendants, and later presented their findings to the other enrollees.

34.    By mid-April 2017, Dr. Plehn-Dujowich withdrew his limited involvement in GFDP altogether, without warning or stating that he was doing so. Over the course of several weeks, Dr. Plehn-Dujowich failed to respond to inquiries from students, including from Ms. Chen and Ms. Zhang.

35.    On May 4, 2017, Ms. Zhang emailed Plaintiffs and the other program enrollees, stating that she had not been in contact with Dr. Plehn-Dujowich for several weeks, and that the project would need to be discontinued until such time as Dr. Plehn-Dujowich "shows up." A copy of Ms. Zhang's email is attached here as **Exhibit I**.

36.    After receiving Ms. Zhang's email, Gary Vartanian, one of the other enrollees in the GFDP, emailed the Fink Center for Finance & Investments at the UCLA Anderson School of Management, to which Dr. Plehn-Dujowich had represented he was affiliated with, on May 4, 2017, inquiring as to Dr. Plehn-Dujowich's whereabouts.

37.    Alexandra Gomez, the Fink Center's assistant director, responded by email the following morning, stating that Dr. Plehn-Dujowich "is no longer with the UCLA Anderson School of Management." A copy of this email exchange is attached here as **Exhibit J**.

38.    Later that same day, Mr. Vartanian received a second email from the Fink Center

Complaint                                                                                                  Case No.

1    stating that "[t]he GFDP program is not authorized by UCLA nor the UCLA Fink Center. Jose is no

2    longer with the university. You will need to take up any questions or issues directly with Jose. This is

3    not a UCLA program." A copy of this email is attached here as **Exhibit K**.

4        39.    On May 5, 2017, Ms. Zhang again emailed Plaintiffs and the rest of the enrollees,

5    stating that she had learned that Dr. Plehn-Dujowich was no longer associated with UCLA and that

6    UCLA had "officially stopped endorsing the project." On information and belief, UCLA *never*

7    endorsed the project, suggesting that Ms. Zhang, like Plaintiffs, was misled by Defendants as to the

8    true nature of the program. A copy of Ms. Zhang's email is attached here as **Exhibit L**.

9        40.    Later that day, Dr. Plehn-Dujowich emailed Ms. Zhang and all enrollees, stating that he

10   had been "traveling extensively" and "got very busy with an important personal transition." He

11   revealed that he was leaving the University of California to join MIT, and stated that the next online

12   session for the program would be held the following week, on May 12, 2017. On information and

13   belief, Dr. Plehn-Dujowich is not currently employed by MIT, despite falsely informing all enrollees

14   of his plans to join MIT. A copy of Dr. Plehn-Dujowich's email is attached here as **Exhibit M**.

15       41.    Upon completing their side of the bargain, Plaintiffs were surprised to discover that –

16   contrary to Defendants' false advertisements and promises – Plaintiffs and all other enrollees in GFDP

17   were not enrolled in a program that was sponsored or affiliated with UC Berkeley or UCLA, were not

18   and would not be provided with meaningful instruction, would not be issued certifications, and would

19   not be provided with letters of recommendation from Dr. Plehn-Dujowich. Indeed, with the exception

20   of the initial lectures covering the class format and method for accessing and analyzing the financial

21   data needed to further Dr. Plehn-Dujowich and BizQualify's business interests, Dr. Plehn-Dujowich

22   did not provide any meaningful instruction. Instead, this task fell to teaching assistants, who were, or

23   are, likely misled as to the nature of the program as well. For the duration of the program, Dr. Plehn-

24   Dujowich merely observed and commented on student presentations. The promised certification,

25   which prominently features the UC Berkeley insignia, cannot be lawfully issued in connection with

26   the program, as GFDP is not affiliated, sponsored, or approved by the University of California.

27       42.    Plaintiffs and hundreds of other students fell victim to this fraud by enrolling in GFDP,

28   paying BizQualify $2,413 to $2,913, or more, for goods and services never provided, and foregoing

**DIG**
DHILLON LAW GROUP INC.

Complaint                                                                      Case No.

1    other opportunities to advance their careers and/or educations, only to find Dr. Plehn-Dujowich and

2    BizQualify were not what they declared themselves to be, and would not provide the goods and

3    services they paid for. Plaintiffs and all other persons similarly situated have suffered damages as a

4    result of this fraud, for which Dr. Plehn-Dujowich and BizQualify are liable.

5                              **Class and Collective Action Allegations**

6    **A.  Fair Labor Standards Act Collective Action**

7              43.    Plaintiffs Qiuzi Hu, Edwin Ramirez, Ivan Ronceria, and Wenzhi Fei brings the First

8    Cause of Action, the Fair Labor Standards Act ("FLSA") claim, as a nationwide "opt-in" collective

9    action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other persons similarly

10   situated. The period covered by the collective action is three (3) years prior to the filing of this

11   Complaint, up to an including the time of trial for this matter (hereinafter "FLSA Collective

12   Action" or "FLSA Collective Action Period"). The FLSA Collective Action members which

13   Plaintiffs seek to represent is composed of and defined as follows:

14             All current and former enrollees of the Global Financial Data Project residing

15             or performing work for the project in the United States or Puerto Rico at any

16             time within the FLSA Collective Action Period.

17             44.    Plaintiffs are informed and believe that the FLSA Collective Action members

18   potentially consists of dozens or hundreds of individuals from all over the United States.

19             45.    During this litigation, Plaintiffs may find it appropriate or necessary to amend the

20   definition of those covered by the FLSA Collective Action. Similarly, Plaintiffs reserve the right to

21   move for the creation of subdivisions of the Collective Action, so that the Collective Action

22   members may be divided along any reasonable point of distinction that might exist among them.

23             46.    Plaintiffs and the FLSA Collective Action members are similarly situated in that

24   they were/are all non-exempt employees subject to Defendants' common practice, policy, or plan

25   of willfully and unlawfully failing to compensate them in accordance with the FLSA.

26             47.    The names and addresses of the FLSA Collective Action members are available from

27   Defendants, and notice should be provided to the members of the FLSA Collective Action via first

28   class mail to the last address known as provided by the Defendants as soon as possible.

Complaint                                                              Case No.

**B. California State Law Class under Federal Rule of Civil Procedure 23**

48.     Plaintiffs Qiuzi Hu, Edwin Ramirez, Ivan Ronceria, and Wenzhi Fei (collectively, the "Class Representatives") bring the Second through Fourteenth Causes of Action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, as follows.

49.     The class that the Class Representatives seek to represent is composed of and defined as follows:

> All persons who enrolled in the Defendants' Global Financial Data Project. Excluded from the Class are Defendants' officers and directors and the immediate families of the Defendants' officer and directors. Also excluded from the Class are the Defendants' legal representatives, heirs, successors or assigns, and any entity in which Defendants have or have had a controlling interest (the "Class").

50.     A California Subclass that the Class Representatives Hu, Ramirez, and Fei seek to represent is composed of and defined as follows:

> All members of the Class that resided, temporarily or permanently, in California during any portion of their enrollment in the Global Financial Data Project, or that performed work in California for the GFDP, at any point (the "California Subclass").

51.     As set forth below, claims two through five are asserted by Plaintiffs Hu, Ramirez, and Fei, and the California Subclass, and claims six through fourteen are asserted by Plaintiffs and the Class. Each Plaintiff is a member of the Class, and Plaintiffs Hu, Ramirez, and Fei are members of the California Subclass. The Class and California Subclass period is four (4) years from the filing of this Complaint, up to and including the time of trial for this matter.

52.     This Class and California Subclass are so numerous that joinder of all members is impracticable. Plaintiffs estimate that at least two hundred persons enrolled in Defendants' fraudulent program. A significant portion of those are believed to have resided, and/or performed work for Defendants in connection with the GFDP, in California.

53.     Many common questions of law and fact involve and affect the parties to be represented. These common questions of law or fact predominate over any questions affecting only



Complaint                                                                      Case No.

individual members of the Class and California Subclass. Common questions include, but are not limited to, the following:

    a.     whether Defendants falsely advertised the GFDP in violation of California law;

    b.     whether Defendants engaged in unfair, unlawful, or fraudulent business practices related to their fraudulently inducing persons to enroll into the GFDP under false pretenses;

    c.     whether Defendants are liable for failing to compensate the program enrollees in satisfaction of federal and California minimum wage laws;

    d.     whether Defendants are liable for failing to comply with California laws requiring Defendants to provide all program enrollees with accurate wage statements, to reimburse for all business expenses incurred, and to promptly pay all enrollees upon their termination;

    e.     whether Defendants are liable for defrauding the GFDP enrollees;

    f.     whether Defendants were unjustly enriched by their actions; and

    g.     whether the Class and California Subclass are entitled to equitable relief, including temporary, preliminary, and permanent injunctive relief, enjoining Defendants from further violating federal and California wage and hour, unfair competition, and consumer protection laws.

    54.    The Class Representatives' claims are typical of the claims of the Class and the California Subclass they seek to represent, in that the Class Representatives, and all members of the proposed Class and Subclasses because they (a) enrolled in the GFDP, (b) paid Defendants a course fee, (c) were not provided with a certification from UC Berkeley or UCLA, as Defendants promised, (d) were not provided with a letter of recommendation written by Dr. Plehn-Dujowich, as Defendants promised, and, as with respect to the California Subclass, (e) Plaintiffs Hu, Ramirez, and Fei resided and/or performed work for the GFDP within California.

    55.    The Class Representatives will fairly and adequately protect the interests of the Class and California Subclass. Plaintiffs have no interests which are adverse to the interests of absent class members. Plaintiffs have retained attorneys experienced in class actions and complex litigation as their counsel.

    56.    Defendants have acted on grounds generally applicable to the Class and California Subclass, thereby making final injunctive relief appropriate.

Complaint                                                        Case No.

57.    The Class Representatives aver that the prerequisites for class action treatment apply to this action, and that questions of law or fact common to the Class and California Subclass predominate over any questions affecting only individual members, and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action. The Class Representatives further state that the interest of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of this Class and California Subclass will not be difficult.

### FIRST CLAIM FOR RELIEF

### Failure to Pay Minimum Wage (29 U.S.C. § 201 *et seq.*)

### (By All Plaintiffs Individually and as a Collective Action Against All Defendants)

58.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

59.    Defendants violated the Fair Labor Standards Act by failing to pay the Collective Action members minimum wage for services provided to Defendants. Each Plaintiff and Collective Action member was an employee of Defendants by enrolling and participating in the GFDP. Defendants instructed each Plaintiff and Collective Action member on how to collect and analyze financial data maintained by Defendants, including by accessing and using BizQualify's financial tools. Defendants therefore had the right to control the manner and means by which the work was or is performed. The data collection and analysis services provided by Plaintiffs and the Collective Action members were, and are, an integral part of Defendants' business of acquiring and selling financial data. Plaintiffs and the Collective Action members did not, and did not stand to, independently profit from engaging in those activities; rather, Defendants profited, and continue to profit, from their efforts, and failed to compensate Plaintiffs and the Collective Action members whatsoever.

60.    At this time, Plaintiffs estimate that each Collective Action member provided six to ten hours of work for each of the ten weeks of the GFDP, without any compensation for their work.

61.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

62.    Plaintiffs, on behalf of themselves and the Collective Action members, seek recovery



Complaint                                                                                                      Case No.

of their attorneys' fees and costs of action to be paid by Defendants, as provided by the FLSA.

63.    Plaintiffs, on behalf of themselves and the Collective Action members, seek damages in the amount of their respective unpaid minimum wage compensation, liquidated damages as provided by the FLSA, interest, and such other legal and equitable relief as this Court deems just and proper.

64.    At all times relevant to this Complaint, since three years prior to the commencement of this action, Plaintiff and the Collective Action members, as alleged herein, claim that each Defendant willfully failed to pay minimum wage owed to said Plaintiff and the Collective Action members for all of his/her/their hours worked per workweek, in violation of the FLSA.

65.    The aforementioned conduct of Defendants, and each of them, constitutes multiple and repeated violations of 29 U.S.C. § 206; based thereon, Plaintiffs pray for and seek judgment and appropriate orders in favor of Plaintiffs and those in the Collective Action identified above against Defendants, jointly and severally, as follows: for the recovery of minimum wage compensation owed to Plaintiffs and the Collective Action members plus liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), in an amount according to proof; for an award of pre-judgment interest; for costs of suit; for interest as allowed by law; and for such other relief as may be proper.

66.    WHEREFORE, Plaintiffs, on behalf of themselves and all members of the proposed Collective Action Plaintiffs seek to represent, prays for relief as follows:

   a.    For an order certifying that the first claim of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the opt-in Collective Action, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

   b.    Designation of Plaintiffs as representatives for the FLSA claims and Plaintiffs' attorneys as Counsel for the Collective Action;

   c.    Appropriate equitable relief to remedy Defendants' violations of the FLSA, including but not limited to, an order enjoining Defendants from continuing its unlawful practices;

   d.    All unpaid minimum wages, as calculated by the applicable provisions of the FLSA at 29 U.S.C. §§ 201 et seq., and applicable regulations promulgated in the Code of

Complaint                                                                                    Case No.

1    Federal Regulations and/or opinions and directives of the Department of Labor;

2    e.    All appropriate federal statutory penalties;

3    f.    An award of liquidated damages pursuant to the FLSA, and according to proof;

4    g.    Pre-Judgement and post-Judgment interest, as provided by law;

5    h.    Such other equitable relief as the Court may deem just and proper;

6    i.    Attorneys' fees and costs of suit including expert fees, as permitted by the FLSA and/or

7        federal law.

8    **SECOND CLAIM FOR RELIEF**

9    **Failure to Pay Minimum Wage (Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1)**

10    **(By Plaintiffs Hu, Ramirez, and Fei, and California Subclass Against All Defendants)**

11    67.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully

12    set forth herein.

13    68.    California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1 and the Industrial

14    Welfare Commission Wage Orders 4-2001 entitle non-exempt employees to an amount equal to or

15    greater than the minimum wage for all hours worked.

16    69.    Defendants did not, and do not, compensate Plaintiffs Hu, Ramirez, and Fei or the

17    California Subclass for time spent performing data collection and analysis services, or training for the

18    same. At this time, Plaintiffs estimate that each Plaintiff and California Subclass member provided six

19    to ten hours of work for each of the ten weeks of the GFDP.

20    70.    As a result of these violations, Defendants are liable to Plaintiffs Hu, Ramirez, and Fei

21    and the California Subclass for failure to pay minimum wage, pursuant to California Labor Code §§

22    558, 1197.1, and 2698.

23    71.    Plaintiffs Hu, Ramirez, and Fei, on behalf of themselves and the California Subclass,

24    seek damages in the amount of their respective unpaid minimum wage compensation, liquidated

25    damages as provided by California Labor Code § 1194.2, interest, attorneys' fees and costs, as

26    permitted by California Labor Code § 1194, and such other legal and equitable relief as this Court

27    deems just and proper.

28    72.    At all-times relevant to this Complaint, since three years prior to the commencement of

18



Complaint                                                                                  Case No.

this action, Plaintiffs Hu, Ramirez, and Fei and the California Subclass, as alleged herein, claim that each Defendant willfully failed to pay minimum wage owed to Plaintiffs and the California Subclass Members for all of his/her/their hours worked per workweek, in violation of the above-cited provisions.

**THIRD CLAIM FOR RELIEF**

**Failure to Provide Accurate Wage Statements (Cal. Lab. Code § 226)**

**(By Plaintiffs Hu, Ramirez, and Fei, and California Subclass Against All Defendants)**

73.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

74.     Labor Code § 226 requires an employer to furnish its employees with an accurate itemized statement in writing showing, among other things: (1) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual; (2) total hours worked by each respective individual; (3) gross wages earned; (4) net wages earned; (5) all deductions; (6) inclusive dates of the period for which the employee is paid; (7) the name of the employee and an employee identification or social security number; and (8) the name and address of the legal entity that is the employer.

75.     As a pattern and practice, in violation of Labor Code § 226(a), Defendants did not, and do not, provide Plaintiffs Hu, Ramirez, and Fei or the California Subclass members with accurate itemized wages statements, or any statement whatsoever.

76.     As a result of Defendants' failure to provide accurate itemized wages statements, Plaintiffs Hu, Ramirez, and Fei and the California Subclass members suffered actual damages and harm by being unable to determine their applicable hourly rate or the amount of hours worked each pay period, which prevented them from becoming aware of these violations and asserting their statutory protections under California law.

77.     Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) by failing to provide any wage statement to Plaintiffs Hu, Ramirez, and Fei or the California Subclass Members.

78.     Pursuant to Labor Code § 226(e), Plaintiffs Hu, Ramirez, and Fei and the California

Subclass Members are entitled to recover the greater of all actual damages or fifty dollars ($50.00) for the initial pay period in which a violation occurs and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000.00)

79.    The Plaintiffs Hu, Ramirez, and Fei and California Subclass are entitled to an award of costs and reasonable attorneys' fees under Labor Code § 226(h).

**FOURTH CLAIM FOR RELIEF**

**Failure to Reimburse Required Business Expenses (Cal. Lab. Code § 2802)**

**(By Plaintiffs Hu, Ramirez, and Fei, and California Subclass Against All Defendants)**

80.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

81.    Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

82.    Plaintiffs Hu, Ramirez, and Fei and the California Subclass members incurred reasonable and necessary expenses in the course of completing their job duties, which were not reimbursed by Defendants. These expenses include paying a $2,413 (or more) course fee to BizQualify, and computer, internet, and related costs.

83.    Plaintiffs Hu, Ramirez, and Fei and the California Subclass members are entitled to reimbursement for these necessary expenditures, plus interest and attorneys' fees and costs, under Labor Code § 2802.

**FIFTH CLAIM FOR RELIEF**

**Failure to Pay Wages Upon Discharge (Cal. Lab. Code §§ 201-203)**

**(By Plaintiffs Hu, Ramirez, and Fei, and California Subclass Against All Defendants)**

84.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

85.    Labor Code § 203 provides that if an employer willfully fails to pay, without abatement or reduction, in accordance with Labor Code §§ 201, 201.5, 202, and 205.5, any wages of an



Complaint                                                                                              Case No.

employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but wages shall not continue for more than thirty (30) days.

86.    Defendants had a constituent and uniform policy, practice, and procedure of willfully failing to pay the earned wages of Defendants' former employees, including, but not limited to, the failure to pay minimum wage and other forms of compensation in an amount according to proof.

87.    Plaintiffs Hu, Ramirez, and Fei and the California Subclass members are no longer employed by Defendants, having either been discharged from or quit their employ.

88.    Defendants willfully failed to pay Plaintiffs Hu, Ramirez, and Fei and the California Subclass members for monies earned within seventy-two (72) hours of their resignation, failed to pay those sums for thirty (30) days thereafter, and continue to owe such sums.

89.    Defendants willful failure to pay wages to Plaintiffs Hu, Ramirez, and Fei and the California Subclass violates Labor Code § 203, and Plaintiffs and the California Subclass members are entitled to penalties in the amount of their respective daily wages multiplied by thirty (30) days, plus the full amount of the unpaid wages, plus interest, reasonable attorneys' fees and costs of suit.

**SIXTH CLAIM FOR RELIEF**

**False Advertising (Cal. Bus. & Prof. Code §§ 17500)**

**(By All Plaintiffs and Class Against All Defendants)**

90.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

91.    California Business and Professions Code § 17500 *et seq.* prohibits various deceptive practices in connection with the dissemination in any manner of representations which are likely to deceive members of the public to purchase products and services such as the enrolling in Defendants fraudulent GFDP in exchange for a course fee.

92.    Defendants' acts and practices as described herein have deceived and/or are likely to deceive Plaintiff and Class members. Defendants use of UC Berkeley and UCLA logos, statements indicating that UC Berkeley and/or UCLA sponsor or are affiliated with the GFDP, and statements indicating that enrollees in the program will receive meaningful educational instruction, a certification

21



Complaint                                                                    Case No.

of completion, and letter of recommendation, were all false, deceptive, and misleading to consumers, including to Plaintiffs and the Class.

93.     By their actions, Defendants have been and are disseminating uniform advertising, including advertisements attached hereto, which by its nature is unfair, deceptive, untrue, or misleading within the meaning of California Business and Professions Code § 17500 *et seq.* Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

94.     Defendants intended that Plaintiffs and Class members rely upon the false advertisements and numerous material misrepresentations as set forth more fully above.

95.     Plaintiff and the Class members relied upon the advertisements and misrepresentations to their detriment.

96.     The above-described false, misleading, deceptive advertising Defendants disseminated continues to have likelihood to deceive the consuming public.

97.     Plaintiffs and the Class are entitled to recover restitutionary damages, penalties, and permanent and temporary injunctive relief to prevent Defendants from continuing in their deceptive advertising campaign.

## SEVENTH CLAIM FOR RELIEF

### Unfair Competition (Cal. Bus. & Prof. Code §§ 17200)

### (By All Plaintiffs and Class Against All Defendants)

98.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

99.     California Business & Professions Code § 17200 *et seq.* prohibits any unlawful, unfair, or fraudulent business practice.

100.    Defendants' actions and omissions as described herein constitute unlawful, unfair, and fraudulent activities as proscribed by California's unfair competition law. Defendants violated the laws stated herein, including California Civil Code §§ 1709, 1710, 1710(2), 1750, 17500, and California Penal Code § 496.

101.    Defendants' fraudulent advertisements and false promises of providing Plaintiffs and

Complaint                                                                                      Case No.

the Class with meaningful educational instruction, a course certification, and a letter of recommendation were unlawful, unfair, and fraudulent. Such practices are unethical, oppressive, and unscrupulous, and they violated fundamental policies of the State of California.

102.    Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and other Class members. Plaintiffs have suffered injury and lost money as a result of Defendants' unlawful, unfair, and fraudulent conduct.

103.    Accordingly, Plaintiffs and the Class are entitled to restitutionary and temporary and permanent injunctive relief.

**EIGHTH CLAIM FOR RELIEF**

**Violation of Consumer Legal Remedies Act (Cal. Bus. & Prof. Code §§ 1750 *et seq.*)**

**(By All Plaintiffs and Class Against All Defendants)**

104.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

105.    The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, provides protection for consumers against unfair, deceptive, and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services in California.

106.    Plaintiffs and the Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Plaintiffs and the Class members paid at least $2,413 to enroll in Defendants' fraudulent GFDP, in exchange for meaningful educational instruction, a course certification, and a letter of recommendation, which constituted "goods" and "services" as defined by Cal. Civ. Code § 1761(a)-(b).

107.    Defendants' actions violated Cal. Civ. Code § 1770(a) in the following respects:

    a.    passing off GFDP, and its related goods (i.e. certification and recommendation letter) and services (i.e. instruction), as those of UC Berkeley and UCLA, in violation of Civ. Code, § 1770(a)(1);

    b.    misrepresenting the source, sponsorship, approval, or certification of GFDP, and its related goods (i.e. certification and recommendation letter) and services (i.e. instruction), as that of UC Berkeley and UCLA, in violation of Civ. Code, §

23



1  1770(a)(2);

2  c.  misrepresenting the affiliation, connection, or association with, or certification of

3  GFDP, and its related goods (i.e. certification and recommendation letter) and services

4  (i.e. instruction), by the UC Berkeley and UCLA, in violation of Civ. Code, §

5  1770(a)(3);

6  d.  misrepresenting that GFDP, and its related goods (i.e. certification and

7  recommendation letter) and services (i.e. instruction), has "sponsorship, approval,

8  characteristics ingredients, uses, benefits, or quantities" that it does not have, including

9  but not limited to your misrepresentation that UC Berkeley and UCLA sponsor or

10  approve of GFDP, that you will provide meaningful instruction, that you will provide a

11  certification and recommendation letter upon completion of GFDP, and that work

12  performed by Plaintiffs in connection with GFDP will meaningfully advance the

13  students' career objectives, in violation of Civ. Code, § 1770(a)(5);

14  e.  misrepresenting that the instruction, certification, and letter of recommendation offered

15  through GFDP are of a particular standard, quality, and/or grade, when they are of

16  another, lesser, grade, in violation of Civ. Code § 1770(a)(7); and

17  f.  advertising the GFDP, and its related goods (i.e. certification and recommendation

18  letter) and services (i.e. instruction), with the intent not to sell them as advertised or

19  represented. Civ. Code, § 1770(a)(9).

20  108.  By reason of the foregoing, Plaintiff and the Class have been irreparably harmed,

21  entitling them to injunctive relief, disgorgement, and restitution.

22  109.  Pursuant to § 1782 of the CLRA, Plaintiffs notified Defendants in writing of the

23  particular violations of the CLRA and demanded Defendants rectify the actions described above by

24  providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice

25  to all affected customers of their intent to do so. Plaintiffs sent this notice by certified mail, return

26  receipt request to Defendants' principal place of business and place of employment.

27  110.  Defendants failed to adequately rectify, or state an interest in rectifying, their actions,

28  and, accordingly, Plaintiffs and the Class are entitled to compensatory and punitive damages, costs,

DIG

DHILLON LAW GROUP INC.

Complaint                                                                                      Case No.

attorneys' fees, and any other relief which the Court deems proper.

## NINTH CLAIM FOR RELIEF

### Fraud (Cal. Civ. Code §§ 1709, 1710)

### (By All Plaintiffs and Class Against All Defendants)

111.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

112.    Defendants intentionally misrepresented to Plaintiffs and the Class the true nature of the GFDP – a program that benefits Defendants, not the program's enrollees. Defendants knowingly lied to Plaintiffs and the Class, falsely promising to them that, in exchange for a $2,413 (or more) course fee that Plaintiffs and the Class would receive meaningful educational instruction, a course certification from UC Berkeley and/or UCLA, and a letter of recommendation written by Dr. Plehn-Dujowich. At no time did Defendants intend to fulfill these false promises.

113.    Defendants' misrepresentations and false promises were material. Plaintiffs and the Class members would not have enrolled in the GFDP had they known the truth, namely, that they would be paying Defendants for the privilege of working for Defendants' business without pay, and without any of the items Defendants promised.

114.    Defendants intended for Plaintiffs and the Class members to rely on their misrepresentations and false promises, and Defendants had reason to expect that Plaintiffs and the Class members would so rely, due to their status as undergraduate students, and their interest in finance, accounting, economics, or related areas.

115.    Plaintiffs and the Class members were justified in relying upon Defendants' misrepresentations and false promises, including because Defendants expended substantial efforts to fraudulently advertise the GFDP through UC Berkeley, UCLA, and other reputable university contacts, such as undergraduate advisors. Indeed, advertisements for the GFDP were posted on both the UC Berkeley and UCLA websites, as a result of Defendants' fraudulent activities.

116.    Plaintiffs and the Class members have been substantially harmed by Defendants' misrepresentations and false promises because they paid Defendants a course fee, and invested significant time, energy, and resources into performing work for Defendants, without compensation.

Complaint                                                                                                                    Case No.

117.    Plaintiffs are informed and believe, and thereon allege, that in performing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud, and malice, and that Plaintiffs and the Class members are entitled to punitive damages to punish Defendants and to deter such conduct in the future, in an amount to be determined at trial.

**TENTH CLAIM FOR RELIEF**

**Negligent Misrepresentation (Cal. Civ. Code § 1710(2))**

**(By All Plaintiffs and Class Against All Defendants)**

118.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

119.    Defendants intentionally, recklessly, or negligently misrepresented to Plaintiffs and the Class that true nature of the GFDP – a program that benefits Defendants, not the program's enrollees. Defendants misrepresented to Plaintiffs and the Class that, in exchange for a minimum $2,413 course fee, that Plaintiffs and the Class would receive meaningful educational instruction, a course certification from UC Berkeley and/or UCLA, and a letter of recommendation written by Dr. Plehn-Dujowich. At no time did Defendants intend to fulfill these false promises. Defendants did so without grounds for believing these representations and promises to be true.

120.    Defendants' misrepresentations and false promises were material. Plaintiffs and the Class members would not have enrolled in the GFDP had they known the truth, that they would be paying Defendants for the privilege of working for Defendants' business without pay, and without any of the items Defendants promised.

121.    Defendants intended for Plaintiffs and the Class members to rely on their misrepresentations and false promises, and Defendants had reason to expect that Plaintiffs and the Class members would so rely, due to their status as undergraduate students, and interest in finance, accounting, economics, or related areas.

122.    Plaintiffs and the Class members were justified in relying upon Defendants' misrepresentations and false promises, because Defendants expended substantial efforts to fraudulently advertise the GFDP through UC Berkeley, UCLA, and other reputable university contacts, including undergraduate advisors. Indeed, advertisements for the GFDP were posted on both

Complaint                                                                                           Case No.

the UC Berkeley and UCLA websites, as a result of Defendants fraudulent activities.

123.    Plaintiffs and the Class members have been substantially harmed by Defendants' misrepresentations and false promises because they paid Defendants a course fee, and invested significant time, energy, and resources into performing work for Defendants, without compensation.

## ELEVENTH CLAIM FOR RELIEF

### Breach of Implied Contract

### (By All Plaintiffs and Class Against All Defendants)

124.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

125.    By their actions, Defendants entered into a contract with each Plaintiff and each Class member whereby Plaintiffs and the Class members paid Defendants a course fee, in exchange for Defendants promise to provide Plaintiffs and the Class members meaningful educational instruction, a course certification, and a letter of recommendation.

126.    Plaintiffs and the Class members satisfied all obligations pursuant to the implied contract, by paying the course fee, and satisfying all obligations required by Defendants.

127.    Defendants breached the implied contract by failing to provide meaningful education instruction, a course certification, and a letter of recommendation to Plaintiffs and the Class members.

128.    Plaintiffs the Class members have been harmed as a result of Defendants' breaches of contract, and are entitled to damages in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF

### Quantum Meruit

### (By All Plaintiffs and Class Against All Defendants)

129.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

130.    As a result of Defendants requests, representations, and instructions, Plaintiffs and the Class members performed data collection and analysis services and incurred costs.

131.    There was never any understanding between Plaintiffs, the Class, and Defendants, that the services rendered were gratuitous. Rather, Plaintiffs and Class performed these services, to the sole

Complaint                                                                                                          Case No.

benefit of Defendants' business operations, in exchange for educational instruction, a certification, and a letter of recommendation that were never provided.

132.    Accordingly, Plaintiffs and the Class are entitled to recover the reasonable value of such services rendered on behalf of, and for, Defendants.

## THIRTEENTH CLAIM FOR RELIEF

### Unjust Enrichment

### (By All Plaintiffs and Class Against All Defendants)

133.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

134.    Defendants have received, and continue to receive, a benefit at the expense of Plaintiff and the Class.

135.    Defendants knowingly fraudulently induced Plaintiffs and the Class to enroll in Defendants GFDP, by making false promises and disseminating deceptive advertisements about the program. In so doing, Plaintiffs and the Class were fraudulently induced into performing work for Defendants, in furtherance of Defendants' business interests, by collecting and analyzing financial data for Defendants.

136.    As a direct and proximate result of Defendants'' unlawful acts and conduct, Plaintiff and Class members were deprived of the use of their money that was unlawfully charged and collected by Defendants, and are therefore entitled to reimbursement of any money unjustly paid to Defendants in connection with the GFDP, and for the value of their work, and for all profits earned by Defendants from the work performed by Plaintiffs and the Class members.

## FOURTEENTH CLAIM FOR RELIEF

### Theft by False Pretenses (Cal. Pen. Code § 496(c))

### (By All Plaintiffs and Class Against All Defendants)

137.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

138.    Defendants intentionally deceived Plaintiffs and the Class by falsely promising and representing that that, in exchange for paying Defendants a course fee of at least $2,413, Defendants



would provide each Plaintiff and Class member with meaningful educational instruction, a course certification, and a letter of recommendation.

139.    At no point did Defendants intend to fulfill these promises. Rather, Defendants intended to steal, through false pretenses, thousands of dollars from Plaintiffs and the Class, knowing that Defendants would never, and could never, uphold their end of the bargain.

140.    In reliance on Defendants false promises and representations, Plaintiffs and the Class members paid Defendants a minimum of $2,413 each, yet Defendants did not fulfill their promises to provide educational instruction, a course certification, or a letter of recommendation.

141.    Defendants maliciously and ruthlessly deceived Plaintiffs and the Class, stealing hundreds of thousands of dollars, their labor, and providing nothing of value in return. As a result of their actions, Defendants are liable to Plaintiffs and the Class for the entire value of all sums paid to Defendants, plus treble damages, the costs of suit, and reasonable attorneys' fees, pursuant to Cal. Penal Code § 496(c). Plaintiffs are also informed and believe, and thereon allege, that in performing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud, and malice, and that Plaintiffs and the Class members are entitled to punitive damages to punish Defendants and to deter such conduct in the future, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following:

i.    For compensatory, restitutionary, treble, and punitive damages against Defendants Dr. Plehn-Dujowich and BizQualify, on all claims, to the fullest extent permitted by law;

ii.    For penalties to the fullest extent permitted by law;

iii.    For temporary, preliminary, and permanent injunctive relief, enjoining Defendants from: advertising the GFDP as being sponsored, affiliated, or endorsed by UC Berkeley or UCLA; misrepresenting the source, sponsorship, or affiliation of the GFDP in any way; or making false promises in connection with any efforts to recruit enrollees to the GFDP.

iv.    For an award of attorneys' fees;

v.    For costs of suit incurred herein; and

vi.    For such other and further relief as the Court deems just and proper.



Complaint                                                                                          Case No.

Respectfully submitted,

Date: March 22, 2018                    DHILLON LAW GROUP INC.

                                    By: /s/ Harmeet K. Dhillon
                                        HARMEET K. DHILLON (SBN: 207873)
                                        harmeet@dhillonlaw.com
                                        KRISTA L. BAUGHMAN (SBN: 264600)
                                        kbaughman@dhillonlaw.com
                                        GREGORY R. MICHAEL (SBN: 306814)
                                        gmichael@dhillonlaw.com
                                        DHILLON LAW GROUP INC.
                                        177 Post Street, Suite 700
                                        San Francisco, California 94108
                                        Telephone: (415) 433-1700
                                        Attorneys for Plaintiffs Qiuzi Hu, Edwin Ramirez, Ivan
                                        Ronceria, Wenzhi Fei, Proposed Class and Subclass,
                                        and Collective Action


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all claims in this action of all issues so triable.

Date: March 22, 2018                    DHILLON LAW GROUP INC.

                                    By: /s/ Harmeet K. Dhillon
                                        HARMEET K. DHILLON (SBN: 207873)
                                        harmeet@dhillonlaw.com
                                        DHILLON LAW GROUP INC.
                                        177 Post Street, Suite 700
                                        San Francisco, California 94108
                                        Telephone: (415) 433-1700
                                        Attorneys for Plaintiffs Qiuzi Hu, Edwin Ramirez, Ivan
                                        Ronceria, Wenzhi Fei, Proposed Class and Subclass, and
                                        Collective Action



Complaint                                                                    Case No.